HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DABONA TANG, | Case No. 2:25-cv-01473-RAJ-TLF |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI, Attorney General of the United States; KRISTI NOEM, Secretary, United States Department of Homeland Security; DREW BOSTOCK, Seattle Field Office Director, United States Citizenship and Immigration Services; WARDEN of Immigration Detention Facility; and the United States Immigration And Customs Enforcement, | |
| Respondents. | |

## I.    INTRODUCTION

THIS MATTER comes before the Court on Petitioner Dabona Tang's motion for preliminary injunction, dkt. # 16. The Court has reviewed the motion, the submissions in support of and in opposition to the motion, and the balance of the record. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Mr. Tang's motion for preliminary injunction.

ORDER - 1

## II. BACKGROUND

### A. Mr. Tang's History

Mr. Tang was born in 1981 in a refugee camp in the Philippines. Dkt. # 16-1 ¶ 1. That same year, Mr. Tang, together with his parents and sister, entered the United States as refugees. *Id.* In 1983, the former Immigration and Naturalization Service adjusted Mr. Tang's status to lawful permanent resident. *Id.*; Dkt. # 16-2 at 2. The adjustment of status document lists Mr. Tang's nationality as "stateless." Dkt. # 16-2 at 2.

In or around July 2009, Mr. Tang was convicted of conspiracy to possess with intent to distribute methylenedioxymethamphetamine (MDMA) and sentenced to 12 months of confinement and 12 months of home detention. Dkt. # 13 ¶ 7. In or around January 2011, U.S. Immigration and Customs Enforcement ("ICE") charged Mr. Tang as being removable based on his aggravated felony conviction. *Id.* ¶ 9. In or around February 2011, an immigration judge ordered that Mr. Tang be removed to Vietnam. *Id.* ¶ 10. On May 19, 2011, upon his release from federal prison, ICE detained Mr. Tang and transferred him into ICE custody. *Id.* ¶ 11. Three months later, on August 19, 2011, Mr. Tang posted bond and was released from ICE custody with an order of supervision. *Id.* ¶ 12. He was detained for 92 days. *Id.* ¶¶ 11–12.

In 2014, Mr. Tang violated the terms of his supervised release when he sustained a misdemeanor for driving with an elevated blood alcohol level. Dkt. # 16-1 ¶ 3; Dkt. # 16-3 at 2. At the time, ICE did not revoke or change the conditions of Mr. Tang's supervised release due to the misdemeanor conviction. Dkt. # 16-1 ¶ 3. Other than the misdemeanor conviction, Mr. Tang has adhered to all terms of his supervised release for the past fourteen years. *Id.* He has never missed a check-in appointment with ICE and has provided all documents requested of him. *Id.*

1    On May 21, 2025, Mr. Tang appeared with his lawyer for a scheduled check-in appointment with ICE in Los Angeles, California. *Id.* ¶ 4; Dkt. # 13 ¶ 14. Upon his arrival, ICE immediately detained Mr. Tang and refused to tell Mr. Tang or his lawyer why he was being detained. Dkt. # 16-1 ¶ 4. About 24 hours after Mr. Tang's re-arrest, ICE transferred him to the Northwest ICE Processing Center in Tacoma, Washington. *Id.* ¶ 5; Dkt. # 13 ¶ 14. Sixteen days later, an immigration officer informed Mr. Tang for the first time that ICE arrested him because of his 2014 misdemeanor conviction. *Id.* ¶ 6. Two months later, in August 2025, an immigration officer presented Mr. Tang with paperwork for his removal, but much of it was in Vietnamese, a language Mr. Tang does not understand. *Id.* ¶¶ 7–8. Mr. Tang completed the forms after being provided English versions of the forms and consulting with his lawyer. *Id.* ¶ 8; Dkt. # 13 ¶¶ 18–19. On August 23, 2025, ICE sent a travel document request for Mr. Tang to ICE Removal and International Operations (RIO). Dkt. # 25 ¶ 3. As of the date of this order, there is no indication the travel document request has made its way to Vietnam.

Until Mr. Tang's May 2025 detention, he lived with his wife and three children and worked as an in-home caretaker for elderly and disabled people. Dkt. # 16-1 ¶ 2. Mr. Tang has no ties to Vietnam, was not born in that country, has no residence there, and does not speak the language. *Id.* ¶ 8. As of this order, Mr. Tang has been detained at the Northwest ICE Processing Center for nearly four months.

**B.      Policies Regarding Removal of Vietnamese Immigrants**

After the Vietnam War, many Vietnamese people fled the country and entered the United States as refugees. *Nguyen v. Scott*, No. 25-cv-1398, 2025 WL 2165995, *4 (W.D. Wash. July 20, 2025). Until 2008, Vietnam refused to repatriate Vietnamese immigrants whom the United States had ordered removed. *Id.* In 2008, the United States and Vietnam reached an agreement under which Vietnam agreed to consider repatriation

ORDER - 3

requests for Vietnamese immigrants who arrived in the United States after July 12, 1995. *Id.* Vietnamese immigrants who arrived before that date, like Mr. Tang, were not considered for repatriation. *Id.* Due to the difficulty of removing pre-1995 Vietnamese immigrants, many who were ordered removed continued to live and work in the United States and have regular check-ins with ICE in accordance with terms of their supervised release. *Nguyen v. Scott*, -- F. Supp. 3d --, 2025 WL 2419288, at *6 (W.D. Wash. Aug. 21, 2025).

In 2020, the United States and Vietnam signed a Memorandum of Understanding ("MOU") to create a process for deporting pre-1995 Vietnamese immigrants. *Id.*; dkt. # 16-5 at 2. Section 4 of the MOU is titled "Eligibility for Acceptance of Return." Dkt. # 16-5 at 3. Under Section 4, Vietnam states it "intends to issue travel documents" and otherwise "accept the removal of an individual subject to a final order of removal from the [United States]" if that individual meets four conditions. *Id.* The individual must have (1) Vietnamese citizenship and no citizenship elsewhere; (2) violated U.S. law, been ordered removed by the United States, and completed any applicable prison sentence; and (3) resided in Vietnam prior to arriving in the United States and currently have no right to reside in any other country or territory. *Id.* The fourth condition is redacted from the version of the MOU available to the Court. *Id.* Section 6 is titled "Factors to be Considered by [Vietnam] before Acceptance of Return." The factors that Vietnam will "take into consideration" "[p]rior to accepting an individual ordered removed by the United States" is likewise redacted. *Id.* at 4. Finally, Section 8 of the MOU is titled "Procedures for Verification and Issuance of Travel Documents." *Id.* at 5. Under that section, Vietnam states it intends to issue travel documents within 30 days for individuals that meet the eligibility criteria listed in MOU Section 4. *Id.* If an

ORDER - 4

individual does not meet the eligibility criteria in MOU Section 4, Vietnam will "notify [the United States] of the eligibility criteria that have not been met." *Id.*

  **C.**  **Procedural History**

  On August 5, 2025, Mr. Tang filed a petition for writ of habeas corpus challenging his detention and requesting that the Court order his release. Dkt. # 1. Pursuant to an order by Magistrate Judge Fricke, the Federal Respondents filed their return and motion to dismiss on August 25, 2025 and noted the motion for September 22, 2025. Dkt. # 12. In an effort to expediate proceedings, Mr. Tang filed a motion for preliminary injunction on August 29, 2025, followed by a motion for temporary restraining order on September 2, 2025. Dkt. # 16; dkt. # 20. This Court denied Mr. Tang's motion for temporary restraining order but set expedited briefing for Mr. Tang's motion for preliminary injunction. Dkt. # 23.

### III. LEGAL STANDARD

  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To prevail on a motion for preliminary injunction, a plaintiff bears the burden of establishing (1) he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Id.* at 20. In the Ninth Circuit, a preliminary injunction is also appropriate if the plaintiff demonstrates that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," and the remaining *Winter* factors are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

  The Ninth Circuit distinguishes between "prohibitory" and "mandatory" injunctions. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873,

ORDER - 5

878–79 (9th Cir. 2009). "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Id.* (cleaned up). "A mandatory injunction orders a responsible party to take action." *Id.* (cleaned up). Because mandatory injunctions go "well beyond simply maintaining the status quo," they "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* Courts in this circuit have found a request to release a re-detained noncitizen seeks a prohibitory injunction because it seeks "to preserve the status quo preceding [the] litigation—[the petitioner's] presence in the United States free from detention." *Nguyen*, 2025 WL 2419288, at \*10 (quoting *Domingo-Ros v. Archambeault*, No. 25-cv-1208, 2025 WL 1425558, at \*2 (S.D. Cal. May 18, 2025)). Thus, the less stringent prohibitory injunction standard applies here.

## IV. DISCUSSION

### A. Request for Release from Custody

Mr. Tang argues his re-detention (1) is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because it is indefinite; (2) violates procedural due process because Mr. Tang was re-arrested without any pre-deprivation process; and (3) violates substantive due process because there is no regulatory purpose for Mr. Tang's detention. Dkt. # 16 at 9–14. For the reasons discussed below, the Court agrees Mr. Tang is likely to succeed on his claim that his re-detention is unlawful under *Zadvydas* and that all other *Winter* factors are met. The Court therefore does not reach Mr. Tang's remaining procedural and substantive due process arguments.

#### 1. Likelihood of Success on the Merits

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231. *Hoac v. Becerra*, No. 25-cv-1710, 2025 WL 1993771, at \* 3 (E.D. Cal. July 16,

2025). Under that statute, the government must hold a noncitizen in custody during the 90-day "removal period" after entry of a final removal order. 8 U.S.C. § 1231(a)(2); *see also Zadvydas*, 533 U.S at 682. After the 90-day removal period, the government "may" continue to detain the noncitizen who still remains in the United States or release the noncitizen under supervision. 8 U.S.C. § 1231(a)(6); *see also Zadvydas*, 533 U.S at 682. In *Zadvydas*, the Supreme Court held § 1231 "limits [a noncitizen's] post-removal period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." 533 U.S at 689. A total detention of six months is presumptively reasonable. *Id.* at 701. After six months, a petitioner challenging his detention must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The burden then shifts to the government to come up with "evidence sufficient to rebut that showing." *Id.* "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Mr. Tang's detention is not presumptively reasonable because his total detention exceeds six months. A petitioner's total length of confinement need not be consecutive to reach the six-month presumptively reasonable limit established in *Zadvydas*. *See Nguyen*, 2025 WL 2419288, at *13 (rejecting government's argument that detention period must be consecutive). Here, Mr. Tang was detained for 92 days following his order of removal in 2011, and has been in custody for 113 days as of this order. Dkt. # 13 ¶¶ 11–12, 14. Thus, his total period of confinement exceeds six months and is not presumptively reasonable under *Zadvydas*.

Next, Mr. Tang is likely to meet his burden of showing there is no significant likelihood of his removal in the reasonably foreseeable future. Mr. Tang does not appear to meet the "eligibility for acceptance of return" conditions set out in the MOU between

the United States and Vietnam. Under MOU Section 4, an individual subject to removal must have (1) Vietnamese citizenship and (3) resided in Vietnam prior to arriving in the United States. Dkt. # 16-5 at 3. Mr. Tang introduces evidence that he is not a Vietnamese citizen. A 1983 adjustment of status document issued by the former Immigration and Naturalization Service lists Mr. Tang's nationality as "stateless." Dkt. # 16-2 at 2. In addition, Mr. Tang testifies that he has never resided in Vietnam. Dkt. # 16-1 ¶¶ 1, 8. He was born in a refugee camp in the Philippines and entered the United States as a refugee that same year. *Id.*[1] MOU Section 8 states if an individual does not meet the eligibility criteria of Section 4, then Vietnam will "notify [the United States] of the eligibility criteria that have not been met." Dkt. # 16-5 at 5. The Court's reading of the MOU is that the inquiry stops at that point because Vietnam does not agree to issue travel documents for individuals who do not meet the eligibility criteria of Section 4. It therefore appears that under the MOU, the government will be unable to secure a travel document from Vietnam for Mr. Tang's removal, either in the reasonably foreseeable future or at any time while the current MOU is in effect.

Thus, the burden shifts to the government to rebut Mr. Tang's showing. Federal Respondents argue the adjustment of status document listing Mr. Tang's nationality as "stateless" "shines no light on [Mr. Tang's] current status" because it was issued before he was ordered removed. Dkt. # 24 at 4. They then assert, without any documentary support, that Mr. Tang is a citizen of Vietnam. *Id.* Federal Respondents provide no explanation for why or how removal proceedings in the United States would affect Mr. Tang's citizenship in Vietnam. And aside from a conclusory statement in a deportation officer's declaration, they provide no evidence to overcome an official government-

---

[1] The final eligibility condition under MOU Section 4 is redacted. Dkt. # 16-5 at 3. The Court has no insight on what this condition is or whether Mr. Tang meets the condition.

issued document identifying Mr. Tang as "stateless." Moreover, Federal Respondents have no rebuttal to Mr. Tang's evidence that he has never resided in Vietnam. Accordingly, the Court finds Federal Respondents fail to rebut Mr. Tang's evidence that he does not qualify under conditions one and three of the MOU, and is therefore likely ineligible to receive a travel document from Vietnam.

Federal Respondents argue recent developments in the *Nguyen* case pending before Judge Cartwright undermine Mr. Tang's arguments regarding the MOU. Dkt. # 24 at 4. In *Nguyen*, the court issued an order on August 21, 2025 finding a Vietnamese petitioner was likely to succeed on his *Zadvydas* claim and ordering his release from custody. *Nguyen*, 2025 WL 2419288, at *28. Federal Respondents offer evidence that on September 3, 2025, shortly after the court's preliminary injunction order, Vietnam issued a travel document for the petitioner. Dkt. # 25 ¶ 4. That travel document was "still [en] route to the United States" as of September 8, 2025. *Id.*

The Court disagrees with Federal Respondents. *Nguyen* is distinguishable because unlike Mr. Tang, the *Nguyen* petitioner met the three unredacted MOU Section 4 conditions. He was a Vietnamese citizen, was ordered removed, and resided in Vietnam before immigrating to the United States. *Nguyen*, 2025 WL 2419288, at *1–2, 16. Judge Cartwright found the petitioner was likely to succeed on his *Zadvydas* claim in part because his lack of connection to Vietnam suggested he may not have met the redacted fourth condition in MOU Section 4 and the redacted discretionary factors Vietnam considered in MOU Section 6. *Id.*, at *14. In addition, Judge Cartwright relied on evidence that "the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted." *Id.*, at *15. Here, the Court does not need to speculate about whether Mr. Tang meets the redacted conditions and factors in the MOU because he facially does not meet two unredacted Section 4 conditions:

ORDER - 9

Vietnamese citizenship and having resided in Vietnam. It is also irrelevant that Vietnam is issuing travel documents in general or for individuals that meet MOU Section 4 conditions because Mr. Tang does not. Federal Respondents provide no answer for how they can overcome this hurdle.

Moreover, the only evidence in the record is that ICE submitted a travel document request for Mr. Tang to ICE Removal and International Operations (RIO) on August 23, 2025. Dkt. # 25 ¶ 2. There is no indication when the request will be submitted to Vietnam. This, in combination with serious doubts about whether Vietnam will issue a travel document for Mr. Tang, supports the likelihood that Mr. Tang's current detention is unreasonably indefinite.

### 2. Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). The Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Id.* "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." *Id.*

Thus, under Ninth Circuit law, the very fact of Mr. Tang's likely unconstitutional detention constitutes irreparable harm. Moreover, Mr. Tang is suffering many of the types of irreparable harm from immigration detention recognized in *Hernandez*. For almost four months, Mr. Tang has been away from his wife, three children, his community, and his work as an in-home caretaker for elderly and disabled people. Dkt.

# 16-1 ¶ 2. As a result, he and his family are at minimum suffering from his lack of support at home and the economic burdens of losing his income. These harms continue everyday that he is detained.

### 3. Balance of Equities and the Public Interest

The final two *Winter* factors, balance of equities and public interest, merge when the governing is a party to a case. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). On the one hand, "there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). On the other hand, the burden on Respondents in releasing Mr. Tang is minimal, especially considering Mr. Tang's history of compliance with the conditions of his supervised release. *See Hoac*, 2025 WL 1993771, at *6 (finding final two *Winter* factors favored petitioner because his detention was likely unlawful and nothing in the record suggested releasing petitioner would "impede Respondents' ability to remove him to Vietnam if the necessary travel document is obtained."). The final two *Winter* factors therefore also weigh in favor of granting Mr. Tang's request for a preliminary injunction.

### B. Request For Order Barring Future Arrest or Detention

In addition to his release from custody, Mr. Tang's motion for preliminary injunction asks the Court for an order "barring future arrest or detention by the Respondents absent leave of this Court." Dkt. # 16 at 1. Federal Respondents argue this request is not supported by any legal authority in Mr. Tang's motion, that it does not sound in habeas, and that it goes beyond the relief sought in the petition. Dkt. # 24 at 10. The Court agrees that Mr. Tang's motion contains no discussion and cites no legal authority in support of this requested relief, and finds the relief is not warranted at this juncture.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Petitioner's motion for preliminary injunction as follows:

(1) The Court **GRANTS** Petitioner's request for release from custody and **ORDERS** that Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them immediately release Petitioner Dabona Tang from custody under the conditions of his most recent order of supervision; and

(2) The Court **DENIES** Petitioner's request for an order barring future arrest or detention by the Respondents.

This preliminary injunction shall remain in effect, absent a successful motion to modify or dissolve it, until this Court issues a final decision on Petitioner's habeas petition.

Dated this 11th day of September, 2025.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge