HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DABONA TANG,

                          Petitioner,

        v.

PAMELA BONDI, Attorney
General of the United States;
KRISTI NOEM, Secretary, United
States Department of Homeland
Security; DREW BOSTOCK,
Seattle Field Office Director, United
States Citizenship and Immigration
Services; WARDEN
of Immigration Detention Facility;
and the United States Immigration
And Customs Enforcement,

                          Respondents.

Case No.  2:25-cv-01473-RAJ

ORDER

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.    INTRODUCTION

THIS MATTER comes before the Court on Petitioner Dabona Tang's petition for writ of habeas corpus, Dkt. # 1, and the Federal Respondents' return memorandum and motion to dismiss, Dkt. # 12.  The Court has reviewed the petition, the motion, the submissions in support of and in opposition to the petition and motion, and the balance of the record.  Mr. Tang requested oral argument, but the Court finds oral argument is not necessary.  For the reasons set forth below, the Court **GRANTS** Mr. Tang's petition and **DENIES** the Federal Respondents' motion to dismiss.

ORDER - 1

## II.    BACKGROUND

Mr. Tang's parents fled from Vietnam during the Vietnam war.  Dkt. # 27-6 ¶ 5. In 1981, they gave birth to Mr. Tang in a refugee camp in the Philippines, and later that year, the family entered the United States as refugees.  Dkt. # 27-1 ¶ 1.  Mr. Tang was not born in Vietnam, has no ties to the country, and does not speak the language.  *Id.* ¶ 8. In 1983, the former Immigration and Naturalization Service adjusted Mr. Tang's status to lawful permanent resident.  *Id.* ¶ 1; Dkt. # 27-2 at 2.  The adjustment of status document lists Mr. Tang's nationality as "stateless."  Dkt. # 27-2 at 2.

In 2009, Mr. Tang was convicted of conspiracy to possess with intent to distribute methylenedioxymethamphetamine (MDMA) and sentenced to 12 months of confinement and 12 months of home detention.  Dkt. # 13 ¶ 7.  In 2011, based on this aggravated felony conviction, an immigration judge ordered that Mr. Tang be removed to Vietnam. *Id.* ¶¶ 9–10.  Because Mr. Tang waived appeal to that decision, the removal order became final on the same day.  *Id.*  On May 19, 2011, upon Mr. Tang's release from federal prison, ICE detained him and transferred him into ICE custody.  *Id.* ¶ 11.  After 92 days in detention, ICE released Mr. Tang on an order of supervision.  *Id.* ¶ 12.

For the next fourteen years, Mr. Tang complied with all terms of his supervised release with one exception: in 2014, Mr. Tang sustained a misdemeanor for driving with an elevated blood alcohol level.  Dkt. # 27-1 ¶ 3; Dkt. # 27-3.  At the time, ICE did not revoke or change the conditions of Mr. Tang's supervised release.  Dkt. # 27-1 ¶ 3.  Mr. Tang remained on supervised release and otherwise complied with all conditions, attended all check-in appointments with ICE, provided all documents requested of him. *Id.*

On May 21, 2025, Mr. Tang appeared with his lawyer for a scheduled check-in appointment with ICE in Los Angeles, California.  *Id.* ¶ 4.  ICE detained Mr. Tang and

transferred him to the Northwest ICE Processing Center in Tacoma, Washington. *Id.* ¶ 5. An ICE officer later informed Mr. Tang he was re-detained based on his supervised release violation from 2014. *Id.* ¶ 6. On August 5, 2025, Mr. Tang initiated this action by filing a petition for writ of habeas corpus. Dkt. # 1. On August 23, 2025, more than three months after ICE re-detained Mr. Tang, it submitted a travel document request for Mr. Tang for forwarding to the ICE attaché in Vietnam. Dkt. # 25 ¶ 3.

On September 11, 2025, the Court granted in part Mr. Tang's motion for preliminary injunction and ordered that he be released from custody under the conditions of his most recent order of supervision. Dkt. # 26. After Mr. Tang's release, the parties completed briefing on Mr. Tang's habeas petition and the Federal Respondents' motion to dismiss. Dkts. # 1, 12, 27, 30. On December 5, 2025, at the Court's request, Federal Respondents filed a status report regarding Mr. Tang's removal status. Dkts. # 33, 34. They reported that on October 10, 2025, the attaché informed them that "Vietnam could not verify information on [Mr. Tang]." Dkt. # 34 ¶ 7. The attaché noted that Mr. Tang "gave a false address for parents and spelled his mother's name incorrectly." *Id.* On November 28, 2025, Mr. Tang attended a "re-interview" with ICE "regarding his parents' names and dates of birth." *Id.* ¶ 9. Mr. Tang stated he "was not sure of the correct spelling of his parents[' names] or their dates of birth." *Id.* Mr. Tang is set to report to ICE again "on or before February 26, 2026, to provide his parents' birth certificates or United State[s] Naturalization certificates." *Id.*

## III.     DISCUSSION

Mr. Tang argues his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because there is no significant likelihood of his removal in the reasonably foreseeable future. For the reasons discussed below, the Court agrees. Accordingly, the

1    Court grants Mr. Tang's petition on this basis and does not reach Mr. Tang's remaining
2    procedural and substantive due process arguments.

3           **A.**      **Subject Matter Jurisdiction**

4          As a threshold matter, in their reply brief, the Federal Respondents argue that
5    because the Court granted in part Mr. Tang's motion for preliminary injunction and
6    ordered his release, he "received the relief he sought" and "this Court has lost subject-
7    matter jurisdiction." Dkt. # 30 at 1. The Court disagrees. "Under Supreme Court and
8    Ninth Circuit precedent, temporary relief, up to and including a petitioner's release, does
9    not render a case moot." *Ortiz Martinez v. Wamsley*, No. 25-cv-1822, 2025 WL 2899116,
10   at *3 (W.D. Wash. Oct. 10, 2025) (collecting cases). Thus, the court in *Ortiz Martinez*
11   rejected a nearly identical argument to the one Federal Respondents make here, and found
12   that its "grant of preliminary relief to three petitioners [did] not moot their underlying
13   requests for a writ of habeas corpus." *Id.* The same is true here. The Court's earlier
14   order granted only preliminary, not permanent, relief to Mr. Tang, and does not deprive
15   it of subject matter jurisdiction over this matter.

16          **B.**      **Relief under *Zadvydas***

17         Under the Immigration and Nationality Act (INA), once a final order of removal
18   is entered against a noncitizen, the government "shall" detain the noncitizen during a 90-
19   day "removal period" while it effectuates the noncitizen's removal. 8 U.S.C. §
20   1231(a)(2); *see also Zadvydas*, 533 U.S at 683. After the 90-day removal period, the
21   government "may" continue to detain the noncitizen who still remains in the United
22   States or release the noncitizen under supervision. 8 U.S.C. § 1231(a)(6); *see also*
23   *Zadvydas*, 533 U.S at 683. In *Zadvydas*, the Supreme Court held § 1231 "limits [a
24   noncitizen's] post-removal period detention to a period reasonably necessary to bring
25   about that [noncitizen's] removal from the United States." 533 U.S at 689. "It does not

26

permit indefinite detention." *Id.* A total detention of six months is presumptively reasonable. *Id.* at 701. After six months, a petitioner challenging his detention must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The burden then shifts to the government to come up with "evidence sufficient to rebut that showing." *Id.* "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Proceeding under the *Zadvydas* framework, the Court must first determine whether Mr. Tang's detention was presumptively reasonable. "[W]here a petitioner has been detained and released by ICE multiple times after a final order of removal, 'the clock' on *Zadvydas's* six-month period of presumptive reasonability does not re-start with each successive detention." *Abubaka v. Bondi*, No. 25-cv-1889, 2025 WL 3204369, at *3 (W.D. Wash. Nov. 17, 2025); *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. Aug. 21, 2025) (rejecting government's argument that detention period must be consecutive). Here, in 2011, Mr. Tang was detained for three months (92 days) following his order of removal. *See* Dkt. # 13 ¶¶ 11–12. Then, in 2025, he was detained again for 3 months and 21 days before he was released pursuant to this Court's preliminary injunction order. *See id.* ¶ 14; Dkt. # 34 ¶ 5. Thus, his total period of confinement exceeds six months and is not presumptively reasonable under *Zadvydas*.

Next, Mr. Tang must provide good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future. The Court finds he has met this burden. As courts in this district have found, "the process for procuring travel documents from Vietnam for pre-1995 immigrants continue to be uncertain and protracted." *Abubaka*, 2025 WL 3204369, at *4 (citing *Nguyen*, 796 F. Supp. 3d at 723); *see also Do v. Scott*, No. 25-cv-2187, 2025 WL 3496909, at *4 (W.D. Wash. Dec. 5,

2025).  In Mr. Tang's case, although ICE detained him in May 2025 and submitted a travel document request for him in August 2025, no travel document has issued to date. Dkt. # 13 ¶ 14; Dkt. # 25 ¶ 3; Dkt. # 34 ¶¶ 7–9.  Indeed, on October 10, 2025, the attaché informed ICE that "Vietnam could not verify information on [Mr. Tang]."  Dkt. # 34 ¶ 7. The issue appears to be that Vietnam cannot verify Mr. Tang's parents' identity and citizenship.  *See id.*  Mr. Tang stated in a subsequent ICE re-interview that he is unsure of the correct spelling of his parents' names or their dates of birth.  *Id.* ¶ 9.  Although ICE is requiring Mr. Tang to report back "on or before February 26, 2026, to provide his parents' birth certificates or United State[s] Naturalization certificates," *id.*, it is entirely unclear to the Court if Mr. Tang has access to those documents.  In short, it appears Vietnam has refused to issue a travel document for Mr. Tang, it is unclear if Mr. Tang is able to obtain the additional information ICE requests, and even if he does, he is not set to report back to ICE until February 2026.  Then, even if all goes according to ICE's plan, it is unclear if the additional information will result in Vietnam's issuance of a travel document.  Under these circumstances, Mr. Tang has satisfied his burden of showing there is no significant likelihood of his removal in the reasonably foreseeable future.

Finally, the burden shifts to the government to rebut Mr. Tang's showing.  Federal Respondents offer only vague statements that "ICE anticipates receiving travel documents expeditiously" and that Vietnam has generally increased the issuance of travel documents for pre-1995 immigrants.  Dkt. # 12 at 8.  "But these generalized statements are far too vague and conclusory to rebut petitioner's showing in this particular matter." *Kamyab v. Bondi*, No. 25-cv-389, 2025 WL 2917522, at *4 (W.D. Wash. Oct. 14, 2025). Indeed, the Federal Respondents' assertions that a travel document will issue "expeditiously" and "within 30 days" have clearly proven false in this case.  As a result, the Court finds that Mr. Tang's detention is not reasonable under *Zadvydas*.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's petition for writ of habeas corpus, Dkt. # 1, and **ORDERS** that:

(1)    Petitioner shall remain released from custody under the conditions of his most recent order of supervision; and

(2)    Federal Respondents may not re-detain Petitioner unless, at a minimum, one of the following occurs:

    (a)    Petitioner violates a condition of his order of supervision;

    (b)    The government (i) obtains a valid travel document to Vietnam for Petitioner, (ii) provides the valid travel document to Petitioner and his counsel, (iii) offers Petitioner the opportunity to leave on his own within two months, and (iv) Petitioner does not leave. Under such circumstances, the government may re-detain Petitioner provided it has already made concrete arrangements for him to be put on a flight to Vietnam in the reasonably foreseeable future; or

    (c)    Federal Respondents obtain the Court's approval.

The Court's preliminary injunction order, Dkt. # 26, is **DISSOLVED**.  Federal Respondents' Motion to Dismiss, Dkt. # 12, is **DENIED**.

Dated this 11th day of December, 2025.

The Honorable Richard A. Jones
United States District Judge

ORDER - 7